IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,820

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL ARTHUR FOWLER JR.,
*Appellant*.

SYLLABUS BY THE COURT

1.

Appellate courts review a district court's decision to deny a departure sentence for abuse of discretion.

2.

The mere presence of mitigating factors does not compel a sentencing court to depart from a presumptive sentence.

Appeal from Barton District Court; MIKE KEELEY, judge. Opinion filed April 22, 2022. Affirmed.

*Reid T. Nelson*, of Capital and Conflicts Appeals Office, was on the brief for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.:  Michael Arthur Fowler Jr. appeals from the sentence imposed following his plea of guilty to two counts of premeditated first-degree murder and one count of felony theft. He alleges the district court abused its discretion when it refused to grant a downward departure sentence. Finding no abuse of discretion, we affirm.

FACTS

Fowler does not contest the following facts, which the State presented at his arraignment hearing. In the summer of 2018, 78-year-old Alfred Carpenter Jr. and 79-year-old Pauline Carpenter were working as vendors at a fair in Barton County. Fowler, Kimberly Younger, and Rusty Frasier worked for a carnival company that participated in the fair. The trio developed a plan to kill the Carpenters and steal their possessions. Younger and Frasier may have told Fowler they were part of a "carnival mafia" and this act could initiate him into the crime family. Other individuals may have helped plan and cover up the crimes.

In the early morning of July 14, the threesome went to the location where the Carpenters had parked their truck, camper, and trailer. Alfred was outside behind the camper, and Pauline was asleep inside. Younger distracted Alfred by talking with him about the possibility of selling the trailer and camper, while Fowler sneaked up from behind and tried to slit Alfred's throat with a knife. When Alfred resisted, a struggle ensued, during which Frasier stabbed Alfred repeatedly. Frasier then dragged Alfred into the camper. Fowler followed them and shot Alfred in the abdomen as Alfred lay on the camper floor. Fowler then located Pauline and shot her twice in the face, firing additional shots into her body. Both victims died from their injuries. The three drove the truck, camper, and trailer to Arkansas, where they buried the bodies in a remote park area.

2

The State filed a complaint charging Fowler with one count of capital murder along with alternative counts of premeditated murder and one count of theft. Fowler signed an agreement to plead guilty to two counts of premeditated intentional murder and one count of felony theft. The parties made no agreement for sentencing, leaving the matter open to arguments.

Fowler filed a motion for downward sentencing departure. The State opposed it. The district court denied the motion and sentenced Fowler to two consecutive hard 50 life terms for the murders, and a concurrent 21-month term for the theft.

ANALYSIS

Fowler contends the district court erred in denying his request for a departure sentence. We recently addressed how appellate courts review a departure sentencing decision in *State v. Morley*, 312 Kan. 702, 479 P.3d 928 (2021). We noted confusion about how the abuse of discretion standard applied to review of departure decisions. See 312 Kan. at 707-09. We set out a three-step framework to resolve any confusion, in which appellate courts:

> "(1) determine whether the sentencing court's nonstatutory factor can be a mitigating factor as a matter of law under K.S.A. 2019 Supp. 21-6815(c); (2) if it can, then decide whether that nonstatutory factor's existence is supported by the record; and (3) if so, then determine whether the sentencing court acted reasonably when it concluded there was a substantial and compelling reason to depart in a particular case based on that nonstatutory factor by itself or collectively with other statutory or nonstatutory factors cited by the sentencing court." 312 Kan. at 711.

3

We further explained the inquiries at each step:

> "(1) whether the determination of a nonstatutory factor was guided by an erroneous legal conclusion; (2) whether substantial competent evidence supported the factual finding that the factor existed, i.e., an error of fact; and (3) whether a reasonable person would have taken the view adopted by the sentencing court. And it is important to emphasize that only the first step involves a legal question, subject to unlimited review." 312 Kan. at 711.

The remaining two questions are reviewed for abuse of discretion. 312 Kan. at 711. An abuse of discretion occurs when the lower court's action is "(1) based on an error of fact, (2) based on an error of law, or (3) unreasonable." 312 Kan. at 710. Fowler does not claim the court made an error of law or fact when denying the requested departure. He simply challenges the decision's reasonableness, essentially contending no reasonable judge would decline to depart from a hard 50 sentence given his proffered mitigating factors.

K.S.A. 2020 Supp. 21-6620(c)(1)(A) requires a district court to order a person convicted of premeditated first-degree murder to serve a sentence of life with a mandatory minimum 50-year term of imprisonment before parole eligibility. But a district court may depart from this presumptive sentence if the sentencing judge finds substantial and compelling reasons to do so. K.S.A. 2020 Supp. 21-6815(a). "The term 'substantial' in the departure context means 'real, not imagined, and of substance, not ephemeral.'" *Morley*, 312 Kan. at 713. "A compelling reason to override the statutory presumptive sentence of imprisonment is one that forces a court—by the case's facts—to abandon the status quo and venture beyond the presumptive sentence." 312 Kan. 702, Syl. ¶ 4.

4

K.S.A. 2020 Supp. 21-6815(c)(1) sets forth a non-exclusive list of substantial and compelling mitigating factors a sentencing court may consider in determining whether to grant a downward departure from a presumptive sentence:

"(A) The victim was an aggressor or participant in the criminal conduct associated with the crime of conviction, except that this factor shall not apply to a sexually violent crime as defined in K.S.A. 22-3717, and amendments thereto, or electronic solicitation as defined in K.S.A. 21-5509, and amendments thereto, when: (i) The victim is less than 14 years of age and the offender is 18 or more years of age; or (ii) the offender hires any person by giving, or offering to or agreeing to give, anything of value to the person to engage in an unlawful sex act.

"(B) The offender played a minor or passive role in the crime or participated under circumstances of duress or compulsion. This factor may be considered when it is not sufficient as a complete defense.

"(C) The offender, because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed. The voluntary use of intoxicants, drugs or alcohol does not fall within the purview of this factor.

"(D) The defendant, or the defendant's children, suffered a continuing pattern of physical or sexual abuse by the victim of the offense and the offense is a response to that abuse.

"(E) The degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense.

"(F) The offender committed such crime as a result of an injury, including major depressive disorder, polytrauma, post-traumatic stress disorder or traumatic brain injury, connected to service in a combat zone, as defined in section 112 of the federal internal revenue code of 1986, in the armed forces of the United States of America. As used in this subsection, 'major depressive disorder,' 'polytrauma,' 'post-traumatic stress disorder'

5

and 'traumatic brain injury' shall mean the same as such terms are defined in K.S.A. 21-6630, and amendments thereto."

Fowler proffered mitigation evidence to support his request for a downward sentencing departure. His proffer emphasized several factors: remorse and acceptance of responsibility; personal accomplishments showing a generally good character, such as military service and post-high school education; childhood and birth family challenges; special vulnerability to the influence of others, as shown by psychological testing; physical infirmities, including a heart condition and a head injury; a history of drug and alcohol addiction; and a compliant incarceration record.

The State opposed departure, pointing out that the culprits targeted the Carpenters because of their particular vulnerability based on their age and infirmity. Family members of the victims submitted statements to the court, which emphasized the brutal nature of the crimes, the selfish motivation for the crimes, and the great loss suffered by the family members.

After hearing the arguments of counsel, Fowler's statement expressing remorse, and the statements of the victims' families, the sentencing court denied the motion for downward departure:

"[T]his was . . . a horrible crime as no one disputes and even you don't dispute it, that was committed by you. It was planned. It was premeditated. It was done for the purpose of stealing property, getting money, or perhaps joining a gang or mafia or something. Regardless of any of that, that does not allow anyone to take someone else's lives, whether you were misled or whether—whatever. You also—then once you shot someone twice and then thereafter, Mr. Carpenter, and then you went inside and shot her twice. And those are choices that you made at that point in time. It was then attempted to be hidden, taken out and the bodies were tried to be hidden. They were removed from the state all as a preplan. I have a real difficult time in giving any sympathy to that because it

6

was a choice that was made. And I understand you had a tough life in certain areas, and perhaps there's been some mental illnesses that have affected this, but you know, that has been going on since 1987 in looking at your criminal history. Granted, as you said, criminal history was burglaries and grand auto theft and those types of things. Nothing to this extent. But this was something that was just heinous. I do not believe that there's any—I do not believe the mitigating factors outweigh—and the aggravating factors that occurred in this case. I am not going to find any substantial and compelling reasons to grant a motion for departure to the 25 years. I am going to therefore order—deny the motion to depart, order that the 50 years sentence for the murder of Mr. Carpenter is to be a hard 50. I'm going to run that consecutive, because it was two separate crimes that could have been precluded and prevented, and to Mrs. Carpenter and that would be also a hard 50. I will run the theft charge a concurrent charge. We have two consecutive and then those two are concurrent to the theft charge."

Fowler argues the sentencing court abused its discretion by denying his motion for a departure sentence. In support of his argument, Fowler claims the mitigation factors he proffered to the sentencing court provided substantial and compelling reasons for the court to depart. We agree that the mitigating factors presented by Fowler can be considered substantial, i.e., real. But this court repeatedly has held that the presence of mitigating factors does not require a sentencing judge to impose a lesser sentence. See, e.g., *State v. Grable*, 314 Kan. 337, 346, 498 P.3d 737 (2021) (acceptance of responsibility, close relationship with defendant's family, lack of prior criminal convictions, and relevant mental health problems do not require downward departure); *State v. Blevins*, 313 Kan. 413, 440, 485 P.3d 1175 (2021) (limited criminal history, along with other factors, insufficient to find abuse of discretion in denial of downward departure); *State v. McNabb*, 312 Kan. 609, 614, 478 P.3d 769 (2021) (evidence of remorse and good character does not require downward departure); *State v. Brune*, 307 Kan. 370, 373, 409 P.3d 862 (2018) (evidence defendant accepted responsibility, expressed remorse, stated intentions to enroll in rehabilitative programs, would suffer negative effects in relationship with his children, or any combination of those

7

considerations does not render presumptive sentence abuse of discretion); *State v. McLinn*, 307 Kan. 307, 346-49, 409 P.3d 1 (2018) (limited criminal history, contrite attitude towards crime, and mental and emotional disturbances did not compel district court to depart); *State v. Baker*, 297 Kan. 482, 485, 301 P.3d 706 (2013) (defendant's acceptance of responsibility, his expression of remorse, any savings to the State resulting from his decision to enter plea, and any combination of those considerations did not offset compelling reason stated by judge for imposing consecutive sentences).

Here, the district court comprehensively analyzed the attendant circumstances when denying Fowler's request for a departure sentence. It acknowledged the mitigating factors advanced by Fowler:  his "good character," his limited criminal history, his chemical addictions, and his physical and psychological infirmities. But citing the premeditated, brutal, and heinous nature of the murders, the court determined the mitigating factors did not provide a compelling reason to override the statutory presumptive sentence. Fowler was a principal participant in the crimes. He fired a shot into Alfred's abdomen and fired the fatal shots to Pauline's head. Fowler plotted the crimes out well in advance, including a plan for clean-up afterwards and disposal of the victims' bodies. Fowler chose the Carpenters in part because of their vulnerability. Given these undisputed facts, we are not persuaded by Fowler's argument that no reasonable judge would have denied his motion to depart from the hard 50 sentence. The district court did not abuse its discretion by denying Fowler's departure motion.

Affirmed.